IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CIVIL ACTION NO. _____

KIMBERLY STARK,                        )
Administratrix of the Estate of        )
JERRY DEAN BREWER                      )
       Plaintiff,                      )
                                       )   COMPLAINT AND DEMAND
v.                                     )   FOR JURY TRIAL
                                       )
UNITED STATES OF AMERICA )
For and on behalf of ROBESON   )
HEALTHCARE CORPORATION)
d/b/a MAXTON MEDICAL           )
CENTER, and CHRISTOPHER )
L. BULLARD, LCASA              )
       Defendant                       )
                                       )

NOW COMES the Plaintiff complaining of the Defendant and alleges and says as follows:

JURISDICTION AND VENUE

1. That this is an action under the Federal Tort Claims Act and the Court has jurisdiction of the claim pursuant to 28 U.S.C. §1346(b), §2671- §2680, and pursuant to the Federally Supported Health Centers Assistance Act of 1992 as Amended, 42 U.S.C. §233(g)-(n), herein referred to as FSHCAA.

2. That Jerry Dean Brewer is deceased, having come to his death on the 1st day of September, 2015.

3. That Kimberly Stark is the duly appointed Administratrix of the Estate of Jerry Dean Brewer, having been appointed as Administratrix on the 22nd day of October, 2015, by the Clerk of Superior Court of Robeson County.

4. That Robeson Healthcare Corporation is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Robeson County, North Carolina, and does business as Maxton Medical Center in Maxton, NC.

5. That at all times complained of Christopher L. Bullard and the other employees of the Maxton Medical Center (Robeson Healthcare Corporation) who interacted with Jerry Brewer at the times alleged were acting within the course and scope of their employment at Maxton

Medical Center (Robeson Healthcare Corporation).

6. That the Plaintiff is informed, believes and alleges that Robeson Healthcare Corporation d/b/a Maxton Medical Center is a Federally supported health center located in Pembroke, North Carolina, pursuant to the Federally Supported Health Centers Assistance Act of 1992 as Amended, 42 U.S.C. §233(g)-(n), deemed and accepted by the US Health Resources and Services Administration.

7. That Plaintiff is informed, believes and alleges that at all times complained of the individuals who attempted to treat, assess and examine Jerry Dean Brewer, to include but not limited to Christopher L. Bullard, were either employees of Robeson Healthcare Corporation d/b/a Maxton Medical Center or qualified individuals and included contractors as provided under the FSHCAA and thus covered under the Federal Tort Claims Act, and acting at all times complained of in the course and scope of their employment.

8. That the Plaintiff timely filed a Form 95 making her claim against the US Department of Health and Human Services which was served on the US Department of Health and Human Services office of the General Counsel, Attn: Claims, on August 18, 2017, a copy of which is attached hereto and incorporated herein by reference as provided by law as Exhibit A.

9. That on April 27th, 2018, the Plaintiff received a denial of the Plaintiff's claim from the Department of Health and Human Services, Office of the General Counsel, Law Division Claims Office, in Washington, DC, a copy of which is attached hereto and incorporated herein as provided by law as Exhibit B.

10. That this action is filed within six months of the date of the filing of the determination and denied by the Department of Health and Human Services.

11. That prior to the Decedent's death, Jerry Dean Brewer was a citizen and resident of Robeson County, North Carolina.

12. That on or about August 28, 2015, until his death, the Decedent was a patient of the Robeson Healthcare Corporation in Maxton, North Carolina.

13. That on August 27, 2017, the Decedent was admitted by way of the emergency room to Southeastern Medical Center, having overdosed on his medications.

14. That the record of Southeastern Medical Center reveals that the Plaintiff indicated that he was hurting and overdosed on those medications because he was depressed and in pain and wanted the pain to stop, and that he advised the personnel there that he wanted to hurt himself to make the pain go away.

15. That Southeastern Regional Medical Center, during the period of time that it detained the Decedent as a patient, provided him with a sitter because of the possibility that he was a suicide risk.

stable and directed to follow up with his primary care physician.

17. That on August 28, 2015, the Decedent was taken to Maxton Medical Center which where his primary physician normally treated the Decedent but that Maxton Medical would not allow the Decedent to see his primary physician and therefore he was not seen, treated, or examined because the Decedent did not have the cash funds to pay for his visit with his primary physician and he was informed that Medicaid would not pay for his visit because he had been to the emergency room earlier and within the past 24 hours.

18. That over the weekend, the Decedent spent the 29th and 30th with his girlfriend, Carla M. Locklear, as well as family members, during which time he did not substantially improve but remained severely depressed, anxious, paranoid and was disassociated from reality.

19. That on August 31, 2015, the Decedent had not improved and his mental condition had deteriorated, so the Plaintiff went to his home and he was taken to Monarch, a non-profit corporation a/k/a Monarch Behavioral Services, f/k/a Ark Services, Inc., and that while at Monarch, the Decedent continued to exhibit signs of paranoia and extreme anxiety.

20. That at Monarch, the Decedent's condition was listed as "emergent" and he was seen by video conference by a psychiatrist who changed a portion of his medication and that the Decedent and this Plaintiff were requested to contact Maxton Medical Center (Robeson Healthcare Corporation) since Maxton Medical Center had prescribed most of the prescriptions which the Decedent was taking and according to Monarch was the appropriate facility to make necessary and required changes to those medications.

21. That while there, and after leaving there, the Decedent was noted to have had loss of focus for any length of time, that he repeated himself, that he was worried and anxious, that he believed his bones were broken, that he believed he had been poisoned, that he had difficulty remembering conversations, that he was severely depressed and down in the dumps.

22. That pursuant to the suggestions of the staff at Monarch and because Monarch had failed to take any steps to have the Decedent committed or any other treatment options, the Plaintiff took the Decedent back to his primary care physician at Maxton Medical Center (Robeson Healthcare Corporation) as a follow up of the hospital visit of August 27th.

23. That on the way to Maxton Medical Center, the Decedent was paranoid, believed he was being followed and believed he was going to be killed, believed that his son was going to be taken from him.

24. That by the time the Decedent arrived at Maxton Medical Center (Robeson Health Care Corporation), the Decedent was severely depressed, paranoid, that he was convinced he was being followed and was going to be killed, that the Decedent requested the Plaintiff to stop several times, complaining that he was dying.

25. That upon arrival at Maxton Medical Center(Robeson Healthcare Corporation), the Plaintiff informed the staff of the condition of the Decedent, informed the staff that he was bad off

and about the conduct he had exhibited on the way to Maxton Medical.

26. That a nurse on the staff informed Plaintiff that she, the nurse, would alert the staff as to his serious condition.

27. That while he was at Maxton Medical Center, he was not seen by his primary physician, Dr. Nor, but was seen by Christopher L. Bullard, an LCASA, who is a member of the staff of Maxton Medical Center(Robeson Healthcare Corporation) who was on duty at the time complained of.

28. That the Plaintiff is informed, believes and alleges that Mr. Bullard was a certified licensed clinical addiction specialist associate by the State of North Carolina who identified himself as a counselor.

29. That Mr. Bullard noted for the record that the Decedent had been at Southeastern Medical Center for an overdose of his medications, that he was being treated for depression by both Monarch and Maxton Medical and had a history of chronic pain.

30. That Mr. Bullard also noted that the Plaintiff, who is the Decedent's sister, had concerns about his behavior, his paranoia, depression and going for days without sleeping.

31. Plaintiff is informed and believes that prior to this date Mr. Bullard had not treated or had any interaction with Jerry Dean Brewer.

32. Upon examination, Bullard, acting for and on behalf of Maxton Medical Center, (Robeson Healthcare Corporation) noted that the Decedent was disoriented and disconnected from brief intervention, that he suffered from severe depression as reflected on the PHQ-9 screening with a history of chronic back pain.

33. That while at the clinic the Decedent discussed with Mr. Bullard his nightmares, people attacking him, and not sleeping for days at a time.

34. That Mr. Bullard specifically inquired of the Decedent if he had thoughts of suicide and the Decedent answered "Yes", that a few seconds later the Decedent attempted to change his answer and said "No".

35. That during the conference with Mr. Bullard, the Plaintiff (Decedent's sister) informed Mr. Bullard about her concerns about his mental health, that was it was noted that he was not responsive without prompting, that he could not sit, which was also noted by Mr. Bullard. Decedent was constantly fidgeting while there in Mr. Bullard's presence.

36. That Mr. Bullard informed the Decedent that he was "not crazy" but that it would take a couple of weeks to start feeling better.

37. That during the conference, the Decedent informed Mr. Bullard that he heard voices and was hallucinating, that when he closed his eyes he saw a dark figure. The Decedent also

described to Mr. Bullard his loss of self-worth.

38. That Plaintiff (Decedent's sister) inquired of Mr. Bullard how the Decedent would be able to go for two weeks in the condition he was in and was informed by Mr. Bullard that that was just the time it would take for the medications to reach the proper level in his system.

39. However, Mr. Bullard did not change any medications nor take any further action but released the Decedent on the present medications with an appointment to return in two weeks.

40. That the Plaintiff is informed, believes and alleges that Mr. Bullard failed to make a proper suicide assessment of Jerry Dean Brewer, or such assessment as would have informed Mr. Bullard and/or the staff and Robeson Healthcare Center that Jerry Dean Brewer was a threat to himself or others and also failed to refer him to any other staff who could have done so.

41. The Plaintiff informed the staff at Maxton Medical Center, and described his erratic behavior on the way to the clinic and that he was in very bad shape mentally. The nurse said she would alert the staff. There was no response by the staff or Mr. Bullard which addressed his being admitted to any facility. Plaintiff also informed the staff at Maxton Medical Center that while at Southeastern General the Decedent had been on suicide watch. Plaintiff was told by Mr. Bullard that he would contact Southeastern Regional Medical Center and Monarch to see what the charts stated.

42. That the Plaintiff is informed, believes and alleges that at no time did anyone from Maxton Medical Center contact the staff at Monarch and discuss the Decedent's condition or conversations with anyone at Monarch or any action taken or not taken by Monarch with regard to the Decedent. The Monarch records do represent that the Southeastern Regional Medical Center records were reviewed.

43. That the Plaintiff is informed, believes and alleges that no call of any kind was made to either Southeastern General Hospital or to Monarch in order to ascertain the Decedent's mental state or condition , to include his history of taking an overdose, his threat to harm himself, his severe depression, his desire to do whatever would stop his pain, and his bizarre behavior, paranoia and deep depression.

44. That the Plaintiff is informed, believes and alleges that the Decedent should have and could have been admitted to an inpatient treatment center where he would have received proper care of his urgent mental condition.

45. That the Plaintiff is further informed, believes and alleges that LCASA Bullard should have provided assessment, treatment, planning, counseling, crisis intervention and consultation with other professionals with regard to the Decedent's treatment, rendered services accordingly and should have made a referral to reduce the conditions that placed the Decedent at risk but failed to do so.

46. The staff at Maxton Medical Center never inquired about firearms in the home.

47. That the Plaintiff is informed, believes and alleges that the Defendant Maxton Medical Center (Robeson Healthcare Corporation) and its servants, agents and employees failed to comply with the applicable standard of care, were negligent in that they:

   a. Failed to adequately assess, monitor and communicate Decedent's condition in an appropriate and timely manner;
   b. Failed to assist or implement appropriate interventions to provide for the safety and health of the Decedent;
   c. Failed to develop an adequate treatment plan taking into consideration the crisis situation which the Decedent was experiencing;
   d. Failed to acknowledge the Decedent's numerous indications that he was a threat to cause harm to himself;
   e. Failed to direct that the Decedent be committed to an in-patient facility as he presented a danger to himself;
   f. Failed to promptly note the Decedent's condition and make appropriate provisions for the treatment of the Decedent's condition;
   g. Failed to assess the current medication that the Decedent was on that was obviously was not adequate to handle the severe depression and paranoia experienced by the Decedent;
   h. Failed to use the requisite skill and care required of practitioners in the same or similar profession in the same or similar circumstances;
   i. Failed to prescribe the appropriate medications for the Decedent's health conditions and circumstances;
   j. Failed to maintain proper control and supervision over the personnel assisting the doctors and staff of the clinic in the treating of the Decedent;
   k. Failed to employ the skills, training and knowledge which the Defendants, and each of them to include Mr. Bullard, profess to possess in administering appropriate medical care and mental health care to the Decedent;
   l. Failed to recognize and acknowledge the Decedent's mental health condition and his desire to harm himself as a result of his severe depression and pain;
   m. Failed to take into account the graphic descriptions of the severity of Decedent's condition as related to the staff by the Plaintiff; and
   n. Were negligent in other ways to be proven at trial.

48. That as a result of the negligence and breach of the standard of care, the Decedent was caused to suffer a severe mental breakdown to the extent that he took his own life.

49. That as a result of the breach of the standard of care, the Plaintiff has been caused to suffer injury and damage in the loss of the Decedent's next of kin, those who are entitled to receive any damages govern this action, including but not limited to compensation for loss of reasonably expected services, protection, care, and assistance of the Decedent whether volunteer or obligatory to the persons entitled to the damages recovered, society, companionship, guidance, comfort, kindly offices and advice.

50. That without waiving Plaintiff's right to rely upon the decisions of the North Carolina courts in filing this complaint without a 9(j) certification as at least on one occasion has been held

to be unconstitutional by the North Carolina Court of Appeals, the undersigned attorney represents Plaintiff in this action does object to the requirement of Rule 9(j) on the basis of the right of due process, the right of equal protection, the right to open court, the right to a jury trial and violation of the Constitution of the State of North Carolina and the United States, and further that Rule 9(j) is a constitutional violation of Amendment 7 and Amendment 14 of the US Constitution, and Article 1, Sections 18, 19 and 25 of the North Carolina Constitution.

51. Without waiving these objections and asserting Plaintiff's right to file this Complaint without such certifications, in the event that it is later determined that a 9(j) certification is required, it is hereby certified that pursuant to N.C.G.S. §1A-1(9j), that the personal services of these Defendants has been reviewed by a person who is reasonably expected to qualify as an expert witness pursuant to Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the professional services rendered by the Defendants and their servants, agents and employees did not comply with the applicable standards of care.

52. That as a result of the acts and negligence of the Defendants herein alleged, Plaintiff has suffered damage in a sum in excess of $25,000.00.

53. That the negligence of the Defendants, its servants, agents and employees, and each of them as herein alleged, was one of, if not the sole, proximate cause of Plaintiff's injury and damage.

## SECOND CAUSE OF ACTION
### Alternative Cause of Action vs. Christopher Bullard

54. That the Plaintiff does herewith incorporate the previous allegations contained in Paragraphs 1-53 and repleads the same as if fully set forth.

55. That if this court should find that, at the times and during the actions and inactions complained of, Christopher L. Bullard was not an employee or qualified contractor under the FSHCAA and thus not subject to the FTCA as alleged, then in that event the Plaintiff pleads this alternative cause of action against the Defendant Bullard and alleges that he breached the standard of care for like health providers under the same or similar circumstances in Robeson County, North Carolina.

56. In such event, the Plaintiff prays for trial by jury as to this cause of action.

Wherefore, Plaintiff prays that she have and recover of the Defendants, jointly and severally, judgment in the sum of $500,000.00, for the costs of this action, trial by jury on all issues, and for such other and further relief as the Plaintiff may in the premises be entitled.

RESPECTFULLY SUBMITTED, this 22nd day of August, 2018.

LEWIS, DEESE, NANCE & BRIGGS

BY: /s/James R. Nance, Jr.
JAMES R. NANCE, JR., SB# 3202
Attorney for Plaintiff
330 Dick Street
Fayetteville, NC 28302-1358
Telephone (910) 323-3500
jrnance@ldnlaw.com

## VERIFICATION

KIMBERLY STARK, being first duly sworn, deposes and says that she has read the foregoing Complaint and knows the contents thereof, and that said contents are true of her own knowledge, save and except for those matters and things stated therein upon information and belief, and as to such matters and things, she believes said contents to be true.

Kimberly Stark    *Kimberly Stark* (signature)

STATE OF NORTH CAROLINA
COUNTY OF CUMBERLAND

I certify that the following person(s) personally appeared before me this day and acknowledged to me that he or she voluntarily signed the foregoing documents for the purposes stated therein and in the capacity indicated:

**Name of Principals:**    **Kimberly Stark**

Date: 8/22/2018

*Sandra D. Roush* (signature)
Notary Public

My Commission Expires:

2/9/22

SANDRA D. ROUSH
Printed or Typed Name of Notary Public

SANDRA D. ROUSH
NOTARY PUBLIC
Cumberland County, North Carolina
My Commission Expires: 2-9-2022